CHARLES E. MEDING, receiver of the Butler Silk Manufacturing Company, appellant,

v.

JOSEPH C. TODD, respondent.

[Filed September 20th, 1898.]

1. The receiver of an insolvent corporation was directed to pay a dividend on each claim, duly proved to his satisfaction. R., a creditor, duly filed her claim under oath, alleging that the corporation was justly indebted to her in the sum of $10,000 for money loaned, with interest, and that said indebtedness was evidenced by a chattel mortgage and four promissory notes of said corporation, the particulars of which were specified in the proof of claim, and that an interest in said claim, to the extent of $5,000, had been assigned by her to T., as collateral security, and that the claim was presented on behalf of T. as well as on her own behalf. T., who was also a creditor, duly filed a claim under oath upon another promissory note of the corporation, but made no proof of his interest in said indebtedness of $10,000. In point of fact, as is shown by the evidence in the cause, the claim proved by T. was the indebtedness to which his interest in the claim proved by R. was collateral. The proofs on file did not disclose this fact. The receiver paid to R. the dividend on the entire indebtedness proved by her claim, and to T. the dividend on the claim proved by him. T. sued the receiver, to compel him to account for the share of T. in the payment so made to R.—*Held*, that said two claims on file afforded to the receiver satisfactory proof that the dividend on the entire indebtedness of $10,000 was payable to R. as to part thereof in her own right and as to the remaining part for T.

2. A creditor of an insolvent corporation, in order to entitle himself to a dividend, must do more than put the receiver upon inquiry as to his claim. He must duly file sworn proof, in itself satisfactory. If he fails to do so he cannot, after another creditor has been paid a dividend on satisfactory proof, hold the receiver accountable for the whole or any part of such dividend, upon the ground of notice of the existence and particulars of his own claim, derived from circumstances extrinsic to the proofs on file.

3. It does not appear that, in this case, the receiver had such notice.

On appeal from a final decree advised by Vice-Chancellor Pitney, whose opinion is reported in *Todd* v. *Meding, 11 Dick. Ch. Rep. 83.*

Meding v. Todd.

*Mr. Eugene Stevenson,* for the appellant.

*Mr. Joseph P. Osborne,* for the respondent.

The opinion of the court was delivered by

Adams, J.

The appellant, Mr. Charles E. Meding, who was a defendant below, is receiver of the Butler Silk Manufacturing Company, an insolvent corporation. The bill was filed by Mr. Joseph C. Todd, a creditor of the company, to compel the receiver to account to the complainant for his share in a certain dividend paid by the receiver to Miss Madeline A. Roe, another creditor, which share should, it is said, have been paid by the receiver directly to Mr. Todd. There was the usual order to limit creditors in insolvency. Miss Roe and Mr. Todd have filed with the receiver separate claims under oath.

Miss Roe's proof of claim reads as follows:

"Minnie A. Roe, of full age, being duly sworn, on her oath says that the Butler Silk Manufacturing Company, of which Charles E. Meding is receiver, is justly indebted to this deponent in the sum of ten thousand dollars and interest thereon at the rate of six per cent. per annum from the ninth day of May, 1893, for so much money lent and advanced by this deponent to the said The Butler Silk Manufacturing Company. The deponent further says that, as evidence of the said indebtedness and as security therefor, she holds a chattel mortgage made by the said company to her, bearing date the ninth day of May, 1893, which is recorded in the clerk's office of the county of Passaic, in Book R of Chattel Mortgages, on page 421, &c., and that, as further evidence of the said indebtedness, she holds four promissory notes made by the said company, of which the following are true copies. [Here follow copies of notes for $2,503.34, $4,100, $1,300 and $566.67.] Deponent further says that an interest to the extent of five thousand dollars in said claim has been assigned by her to J. C. Todd, as collateral security; and this claim is presented on behalf of said Todd as well as on her own behalf."

[Here follow the signature and jurat.]

Mr. Todd's proof of claim reads as follows:

"Joseph C. Todd, being duly sworn, on his oath says that the Butler Silk Manufacturing Company, of which Charles E. Meding is receiver, is justly indebted to deponent in the sum of five thousand dollars, principal of a prom-

issory note made by the said company, dated June 8th, 1893, and also in the sum of one dollar and sixty cents for notary's fees for the protesting of the said note, and that interest on said note and protest fees, from December 11th, 1893, is due also thereon."

[Here follows a copy of the note, with the signature and jurat.]

By order of the court of chancery, made in the insolvency proceedings, dated May 21st, 1894, the receiver was authorized and empowered (to quote the words of the order) " to distribute to the creditors of the said insolvent corporation, who have duly proved their claims to his satisfaction, a dividend of twenty per cent. upon each claim so proved." Thereupon, the receiver, in June, 1894, gave to Miss Roe his check for $2,071, being twenty per cent. on her $10,000 claim, with interest, and took her receipt in the following words :

"PATERSON, N. J., June 4th, 1894.

" Received from C. E. Meding, receiver, two thousand and seventy-one 00-100 dollars, in settlement of 20 per cent. dividend from estate of Butler Silk Mfg. Co.

" $2,071.                                              MINNIE A. ROE."

The receiver also gave to Mr. Todd his check for $1,000.32, being twenty per cent. on his claim of $5,001.60, and took his receipt in the following words :

"PATERSON, N. J., June 4th, 1894.

"Received from C. E. Meding, receiver, one thousand 32-100 dollars in settlement of 20 per cent. dividend from estate of Butler Silk Mfg. Co.

" $1,000.32-100.                                      J. C. TODD."

The checks were duly paid within a few days of their date. More than eight months after, by notice dated February 11th, 1895, Mr. Todd demanded of the receiver one-half of the dividend of twenty per cent. that he had paid to Miss Roe, who had, in the meantime, become insolvent. Subsequently, Mr. Todd filed his bill in this suit, by which he asserts his right to recover back from the receiver one-half of the amount of the payment to Miss Roe, upon the ground that her proof exhibited not a claim of $10,000 due and payable to her, but a claim of

$5,000 due and payable to her, and another claim of $5,000 due and payable to Mr. Todd, as her assignee. The learned vice-chancellor adopted the latter view and advised a decree for the complainant.

We do not assent to this conclusion. Miss Roe's proof of claim, considered in itself, was, so far as it touched Mr. Todd, merely notice to the receiver that as to one-half of the debt she was acting in a certain capacity. To that extent the claim was proof of right, not a demand under it. So considered, the document was complete; on any other view it was partial and misleading. It would be harsh to hold the receiver personally liable to Mr. Todd for a claim that he did not himself take the trouble to prove, and that he did not mention in the proof of claim that he did file. The allegation that Miss Roe had assigned to Mr. Todd a $5,000 interest in her claim as collateral security, is well enough as an intimation that to that extent she was not acting in her own right, but is inadequate if put forward as a claim of right in Mr. Todd, upon which he might demand payment from the receiver. Collateral to what? No particulars are given by which the receiver could determine the extent of Mr. Todd's right. A prudent receiver, whose duty it was to be satisfied before he recognized a claim, might well say that the proof thus furnished was unsatisfactory as the basis of any payment to be made by him to Mr. Todd, but that it did establish to his satisfaction Miss Roe's right to receive for herself a dividend on the sum of $5,000, and to receive for Mr. Todd, as collateral to some unexplained principal account with him, and subject to the state of that account, a dividend on the further sum of $5,000. That the construction of this document for which Mr. Todd contends might, in an easily supposable case, have involved the receiver in difficulty, becomes manifest when it is observed that, as appears from the whole record, the claim to which this interest was collateral was the very claim of $5,000 of which Mr. Todd made proof. If, therefore, the receiver had treated the allegation by Miss Roe of Mr. Todd's collateral interest as of itself satisfactory proof of a claim upon which a dividend was due and payable to him, and had acted

upon that construction of its meaning, he would have paid Mr. Todd too much, if the dividends had come to more than fifty per cent. For example, if the receiver, instead of paying a dividend of twenty per cent., had paid a dividend of fifty-five per cent., Mr. Todd would have got one hundred and ten cents on every dollar due him.

The respondent, in order to lay a broader foundation for his claim, seeks to charge the receiver with notice and consequent knowledge of certain facts extrinsic to the sworn proof. It is said that the assignment by Miss Roe to Mr. Todd of an interest to the extent of $5,000 in her $10,000 claim was effected by a certain instrument, dated August 7th, 1893, recorded in the office of the clerk of Passaic county, on August 7th, 1893, in Book Z of Assignments, page 386, &c., by which Miss Roe transferred to Mr. Todd a one-half interest in a chattel mortgage made by the Butler Silk Manufacturing Company to her, dated May 9th, 1893, to secure payment of $10,000, recorded in Book R of Chattel Mortgages for Passaic county, on pages 421, &c., together with a one-half interest in the money due and to grow due thereon, with interest; that this assignment was made as security for an indebtedness of $5,000 due from the company to Mr. Todd; that this indebtedness of $5,000 is the same indebtedness that Mr. Todd proved; and that the receiver must have known all about this, because on August 31st, 1893, he had filed his bill in the court of chancery of New Jersey to set aside this chattel mortgage, which result was secured by decree, signed May 16th, 1894, and subsequently affirmed upon appeal. The facts appearing of record are correctly stated. The point of that suit, however, was the validity or invalidity of the chattel mortgage, not the relation of the respective interests of those who claimed under it. The case is reported in *8 Dick. Ch. Rep. 350*, and turned on the construction of the Chattel Mortgage act. Neither in the opinion of the learned vice-chancellor nor in the opinion read in this court is anything said about the relative rights of Miss Roe and Mr. Todd, who filed a joint and several answer, and had the same counsel, and fought together against their common foe, the receiver. The only allusion to the

matter is found in the statement of facts introductory to the
vice-chancellor's opinion, where it is said, by way of explaining
how Mr. Todd came to be a defendant, that in December, 1892,
Miss Roe had endorsed a note made by the company, for its
accommodation, to Mr. Todd, its landlord, which note was re-
newed when due, with a like endorsement, and that Miss Roe
assigned a half interest in the chattel mortgage to secure him for
her endorsement.    Neither the date nor the amount of the note
are stated.    The bill and answer in this former litigation have
been made evidence in the case under consideration.    Very little
light on the point is to be obtained from either of them.    The
bill alleges upon information that the assignment was made to
Mr. Todd in payment of or as security for an indebtedness of
$5,000 due from the corporation to said Todd, and leaves him
to show what the true consideration of the assignment was, if
any existed.    It is not said that the indebtedness was represented
by a note.    The answer merely admits the assignment, and says
that Mr. Todd is a joint owner of the chattel mortgage with
Miss Roe.    Manifestly, the rights and claims of Miss Roe and
Mr. Todd, *inter sese*, assumed no great importance in that con-
troversy.    It is not necessary or even natural to suppose that
the receiver's attention was particularly directed to that subject.
If, when he received the two sworn proofs of claim, he had sat
down, collated the bill and answer in the former suit and the
statement prefixed to the vice-chancellor's opinion, and then ex-
amined the accounts of the company, he might have reached the
conclusion that the note proved by Mr. Todd represented the
indebtedness of $5,000 which was collaterally secured by Miss
Roe's assignment of her half interest.    But why should the
receiver be at trouble to learn what it would have been so easy
for Mr. Todd, in his proof of claim, to tell him, and what sort
of notice is that which leaves the person notified to find out so
much for himself?    It might, indeed, serve to put the receiver
upon inquiry, but on no plausible view of a claimant's duty
would this be enough.    We think that notice to the receiver
was not clearly proved.

In our view, however, this is not a case to which the law of

notice is applicable. What the receiver was entitled to, under his order, was sworn proof in itself satisfactory; not sworn proof in itself unsatisfactory, supplemented by inferences, more or less debatable, as to what might, could or should be the state of his knowledge and information derived from other sources. To adopt the latter view of a receiver's rights would make vague what should be definite. In matters of this kind a strict rule is desirable for the protection of official trustees and personal representatives, who should not be lightly charged with knowledge and consequent accountability as to contingent, collateral and qualified interests that may be mentioned in claims properly proved before them. These considerations lead to a reversal of the decree and a dismissal of the bill.

*For reversal* — COLLINS, DIXON, GARRISON, GUMMERE, KRUEGER, LIPPINCOTT, VAN SYCKEL, ADAMS, HENDRICKSON, NIXON, VREDENBURGH—11.

*For affirmance*—LUDLOW—1.